O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD XAVIER COLLINS,<br><br>                Plaintiff,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF JUSTICE – BUREAU OF PRISONS; MICHAEL CARVAJAL: WILLIAM WATSON, M.D.; AND, DOES 1 TO 10, INCLUSIVE,<br><br>                Defendants. | Case No.: 5:20-cv-02582-MEMF (SHKx)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION IN LIMINE NO. 1 [ECF NO. 56]** |

      Before the Court is a Motion *in Limine* filed by Defendant United States of America. ECF No. 56. For the reasons stated herein, the Court GRANTS IN PART the Motion *in Limine*.

/ / /

/ / /

/ / /

1

## I. Background

### A. Factual Background[1]

Plaintiff Ronald Xavier Collins ("Collins") is a former prison inmate at the United States Penitentiary in Lompoc, California. FAC ¶ 1. While in federal custody, he underwent a colonoscopy to screen for a malignant neoplasm. *Id.* ¶ 13. Following the colonoscopy, Collins complained of pain in his lower abdominal wall. *Id.* He also complained of pain from consistently passing gas through his penile urethra. *Id.* at 15. While under the care of Defendant, William Watson, M.D. ("Dr. Watson"), Collins was diagnosed with an enterovesical fistula. *Id.* While incarcerated, including after the diagnosis, Collins was required to wear ankle shackles, which caused injuries to his ankles. *Id.* at 16. Following the diagnosis, Collins received no further care from prison medical staff. *Id.* at 15.

### B. Procedural History

Collins suit in this Court on December 15, 2020. ECF No. 1. On October 25, 2021, Collins filed his First Amended Complaint. ECF No. 31 ("FAC"). Collins brings one cause of action: medical negligence action under the Federal Torn Claims Act ("FTCA") for the improper placement of shackles which exacerbated the pain from his condition and caused "ankle ulcers". *See id.* Collins brings this claim against Defendants United States of America, United States Department of Justice Bureau of Prisons, Michael Carvajal, and Dr. Watson (collectively, "Defendants"). *See id.* Defendants answered on November 15, 2021. ECF No. 32.

On August 30, 2023, Defendants filed this Motion *in Limine*. ECF No. 56 ("Motion" or "Mot."). On September 11, 2023, Collins filed an Opposition to the Motion. ECF No. 57 ("Opposition" or "Opp'n"). On September 19, 2023, Defendants filed a reply in support of the Motion *in Limine*. ECF No. 59 ("Reply").

The Court held a hearing on the Motion on October 18, 2023.

---

[1] The following factual background is derived from the allegations in Plaintiff Ronald Xavier Collins's First Amended Complaint, ECF No. 31 ("FAC"), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

## II. Applicable Law

### A. Motions in Limine

A motion *in limine* is "a procedural mechanism to limit in advance testimony of evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party files a motion *in limine* to exclude anticipated prejudicial evidence before the evidence is introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court has the power to grant such motions pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Id.* at 41 n.4 (citation omitted). Regardless of a court's initial decision on a motion *in limine*, it may revisit the issue at trial. *Id.* at 41—42 ("[E]ven if nothing expected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

### B. *Daubert v. Merrell Dow Pharms., Inc.*

Trial courts have a "gatekeeping role" in "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Qualification of an expert witness must be established by a preponderance of the evidence. *See id.* at 592 n.10. As a result, before admitting expert testimony, courts must make a "preliminary assessment" of: (1) whether the expert is qualified to present the opinion offered; (2) "whether the reasoning or methodology underlying the testimony is scientifically valid" (i.e., reliable); and (3) "whether that reasoning or methodology can properly be applied to the facts in issue" (i.e., relevant). *Id.* at 592–93. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F. 3d 960, 969 (9th Cir. 2013).

When the reliability or relevance of a proffered expert's testimony is challenged, the party that preferred the expert bears the burden of showing that the expert's testimony meets the *Daubert* standard. *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020).

/ / /

### C. Federal Rule of Civil Procedure 26

Under Federal Rule of Civil Procedure 26(a)(2), a party is required to disclose an expert witness and submit an accompanying report *prepared and signed by the witness*. Fed. R. Civ. P. 26(a)(2)(A)–(B) (emphasis added). This written report must contain, in part: (1) a complete statement of all opinions expressed by the witness and the "basis and reasons for them"; (2) the facts and data used by the witness in forming his or her opinions; and (3) the exhibits that will be used to support or summarize the opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii).

### D. Federal Rule of Civil Procedure 37

Rule 37(c)(1) gives teeth to the requirements above requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Federal Rule of Civil Procedure 37(c) is "an 'automatic' sanction that prohibits the use of improperly disclosed evidence should a party fail to provide information or identify a witness as required by Rule 26(a) or (e). *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). The Rule states that, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Implicit in Rule 37(c)(1), "is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d 1101, 1107 (9th Cir. 2001). Further, "in addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard" may order payments of expenses caused by the failure, inform the jury of the failure, and impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1).

### III. Discussion

Defendants move to exclude at trial all planned testimony from Collins' proffered expert, Dr. Stein, on two bases: (1) that Dr. Stein signed off on a "ghostwritten" report, and alternatively, (2) because Dr. Stein is unqualified to offer relevant expert opinions in this case. *See* Mot.

The Court finds that Dr. Stein did not participate in the preparation of the report as required by Rule 26. However, the Court finds that this violation of Rule 26 was harmless, and therefore the

Court will not exclude Dr. Stein's testimony under Rule 37. The Court will limit his testimony to the opinions disclosed in deposition, and to subjects on which he is qualified to testify, as described in more detail below.

### A. Dr. Stein did not participate in writing the report as required by Rule 26.

Rule 26 requires that a party intending to proffer an expert witness must disclose a report "prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). "Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports," or prohibit counsel from preparing drafts based on communications with an expert, but does prohibit an attorney from "simply draft[ing] the report without prior substantive input from [the expert] expert" and presenting the report to the expert for a signature. Fed. R. Civ. P. 26, Advisory Committee's Note to 1993 Amendment. Here, the Court finds that the report was not prepared by Dr. Stein.

Dr. Stein was deposed twice. In his first deposition, on May 23, 2023, Dr. Stein explained the process through which he signed the expert report. *See* ECF No. 56-3. Dr. Stein's explanation in the first deposition was as follows: Graham (Collins's counsel) retained Dr. Stein on May 9, 2023. ECF No. 56-3 at 11 (Stein Tr. I 63:10–13). Prior to May 9, 2023, Dr. Stein did not know anything about the case, ECF No. 56-3 at 11 (Stein Tr. I 63:17–19), although he had spoken to Graham on the phone, ECF No. 56-3 at 11 (Stein Tr. I 70:22–71:9). Graham came to meet Dr. Stein at his home on May 9, 2023, and the two met for less than an hour. ECF No. 56-3 at 11–12 (Stein Tr. I 63:17–19, 64:02–0)6. In that meeting, Graham presented Dr. Stein with certain records related to the case and a fully written expert report. ECF No. 56-3 at 12–13 (Stein Tr. I 64:07–14, 65:11–20). Dr. Stein reviewed the draft expert report prepared by Graham and signed the report. ECF No. 56-3 at 5 (Stein Tr. I 27:02–04). As the expert report makes clear, Dr. Stein signed it on May 9, 2023. *See* ECF No. 56-2.

In his second deposition, Dr. Stein presented a slightly different story. *See* ECF No. 56-4; ECF No. 57-1. Dr. Stein's relevant testimony in the second deposition is as follows: Approximately ten days before the May 9 meeting, Graham and Dr. Stein spoke on the phone. ECF No. 56-4 at 5 (Stein Tr. II 178:05–13). This phone conversation lasted approximately an hour and a half. ECF No. 56-4 at 4 (Stein Tr. II 177:22–25). Dr. Stein had no medical records in front of him during that phone

call. ECF No. 56-4 at 5 (Stein Tr. II 178:01–05). When Graham came to Dr. Stein's house on May 9, the two went over the medical records and went over the expert report "page by page, line by line." ECF No. 57-1 at 3–4 (Stein Tr. II 236:21–237:03). Although Graham wrote the report, the opinions in the report were Dr. Stein's opinions at the time he signed it. ECF No. 57-1 at 4 (Stein Tr. II 237:12–16). Dr. Stein signed the report in Graham's presence during the May 9 meeting. ECF No. 56-4 at 5 (Stein Tr. II 178:21–24).

Based on the testimony above, the Court concludes that Dr. Stein did not "prepare" the report as required by Federal Rule of Civil Procedure 26, and instead merely signed it. Dr. Stein's claim in his second deposition that he had a long phone call with Mr. Graham ten days prior to the May 9 meeting is not credible.[2] Dr. Stein previously testified that he was retained on May 9, and that prior to that date, he had no knowledge of the case. *See* ECF No. 56-3 at 11 (Stein Tr. I 63:10–13); ECF No. 56-3 at 11 (Stein Tr. I 63:17–19). The testimony in the two depositions is nearly impossible to reconcile, and the Court finds it far more likely that Dr. Stein's testimony in the first deposition represented the actual facts of what occurred than that Dr. Stein's attempt to rehabilitate himself in the second deposition does. Furthermore, even if the phone call took place, it still would not be clear that the report represented Dr. Stein's opinions or that he assisted in preparing it. Even accepting the version of events in Dr. Stein's second deposition as correct, Dr. Stein had no medical records in front of him during the phone call. *See* ECF No. 56-4 at 5 (Stein Tr. II 178:01–05). Then, in a meeting that lasted less than an hour, Dr. Stein reviewed all relevant medical records and reviewed the report "line by line," and concluded that the first draft Graham prepared fully perfectly captured Dr. Stein's view of the case. *See* ECF No. 57-1 at 3–4 (Stein Tr. II 236:21–237:03). The Court does not find it credible that the report expressed opinions that were Dr. Stein's at the time Dr. Stein signed the report. The facts above show that Graham did not prepare the report with Dr. Stein's assistance as the rule contemplates. Rather, Graham prepared the report and presented it to Dr. Stein

---

[2] The Court's finding that Dr. Stein's testimony is not credible is limited to Dr. Stein's testimony as to the preparation of the report. The Court is not finding, at least at this stage, that Dr. Stein's testimony as whole is not credible.

for a signature, which is not permitted. *See* Fed. R. Civ. P. 26, Advisory Committee's Note to 1993 Amendment.

Precedent does not make clear which party bears the burden of showing whether Dr. Stein prepared the report. If it is shown that Dr. Stein did not prepare the report, then the burden would be on Collins to show that Dr. Stein's violation of Rule 26 was harmless. *See Yeti by Molly*, 259 F.3d at 1107. The Court need not settle which party bears the initial burden of showing a violation of Rule 26. Even assuming that Defendants bear the burden, Defendants have met that assumed burden based on the facts above, and have shown by preponderance of the evidence that Dr. Stein did not prepare his expert report, and thus have shown a violation of Rule 26.

Accordingly, under Rule 37, the Court may sanction Collins for the violation of Rule 26 by excluding Dr. Stein's testimony, unless Collins shows that the violation of Rule 26 was harmless.

**B. The violation of Rule 26 was harmless.**

When a party fails to disclose an expert report written by the expert as required by Rule 26, the expert may be precluded from testifying unless the violation was "substantially justified or harmless." *Yeti by Molly*, 259 F.3d at 1107. The "burden is on the party facing sanctions to prove harmlessness." Here, Collins met his burden.

At the hearing, Defendants presented two arguments as to why there was harm: (1) that Defendants were forced to expend resources to take a second deposition of Dr. Stein because of the violation; and (2) that if Dr. Stein presents opinions that are not truly his own, there is inherent harm.

First, the Court is not convinced that, assuming that the violation of Rule 26 forced Defendants to take a second deposition, this would be harm sufficient to exclude Dr. Stein. To the extent that this might constitute harm, the harm has already occurred and been sufficiently remedied as the Defendants were able to take the second deposition. Allowing Dr. Stein to testify will not cause any prejudice Defendants or cause any further expenditure of resources.

Second, the Court is not convinced that Dr. Stein intends to testify as to any opinions he does not truly hold. Dr. Stein testified in deposition that he adopted all opinions in the report, and "totally agreed" with them. *See* ECF No. 56-4 at 5 (Stein Tr. II at 178:14–20). Other than the fact that Dr. Stein did not write the initial report, nothing suggests that Dr. Stein does not truly hold the opinions

expressed in the report. Dr. Stein also made clear in deposition that he has additional opinions, and nothing suggests that Dr. Stein does not hold those additional opinions which the initial report omitted. *See* ECF No. 56-3 at 15 (Stein Tr. I 71:10–16). Defendants may cross examine Dr. Stein at trial on how he came to his opinions and may use the story of how the report was crafted to show bias if they so desire. But, having reviewed the evidence, the Court does not find that Dr. Stein intends to testify as to opinions he does not truly hold.

Third, the Court notes that Defendants are now and have long been on notice as to what opinions Dr. Stein will testify to. If Dr. Stein were to surprise Defendants at trial with new opinions, this might constitute harm. But Dr. Stein has extensively explained the opinions he intends to testify to in two depositions, and Defendants had an opportunity to prepare for the second deposition and ask Dr. Stein questions on opinions that were not disclosed in the initial report. The Court will limit Dr. Stein's testimony to opinions expressed in his depositions or in the report, and Defendants may object to any opinions that were not disclosed should Dr. Stein offer any such opinions at trial. Because Defendants are on notice as to what Dr. Stein will testify as to, the Court finds that the violation of Rule 26 was harmless.

### C. Dr. Stein may not testify as to the standard of care for general practitioners, ankle ulcers, or duress and/or coercion.

Dr. Stein's expertise is as a urologist, a specialty Dr. Stein has practiced in for 45 years. *See* ECF No. 56-2 at 3–4. A urologist is "a physician who specializes in the urinary or urogenital tract."[3] Dr. Stein does not appear to have any expertise beyond urology.

Before allowing testimony on any subject, the Court is obligated to make a preliminary assessment of whether the expert is qualified to present the opinion offered. *See Daubert*, 509 U.S. at 592–93. The Court finds that Dr. Stein is not qualified to testify on any subjects other than urology.

Defendants moved to exclude three categories of Dr. Stein's testimony based on *Daubert*: (1) opinions on the standard of care for general practitioners (distinct from the standard of care for

---

[3] *See* Uroglist, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/urologist (last visited October 23, 2023).

specialists in urology), (2) opinions on ankle ulcers, and (3) opinions on whether Collins' refusal to be treating was acquired under duress and coercion. *See* Mot. at 7. The Court finds that all three of these subjects are beyond Dr. Stein's expertise. Therefore, Dr. Stein may not testify on these three subjects.

Dr. Stein may testify on Collins's condition (to the extent that condition relates to Collins' urinary tract, i.e., not aspects of Collins's condition related to ankle ulcers or other non-urinary issues) and may testify on what caused or exacerbated that condition.

## IV.  Conclusion

For the reasons stated herein, the Court GRANTS IN PART Defendants' Motion. Dr. Stein may testify at trial only on Collins's urinary-tract-related condition and the causes of this condition, but may not testify on the standard of care for a general practitioner, on aspects of Collins's condition related to ankle ulcers, or on whether duress or coercion were used to acquire Collins's refusal to be treated. Further, Dr. Stein may not offer any opinions that were not disclosed in either his depositions or in his adopted expert report.

IT IS SO ORDERED.

Dated: November 22, 2023

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge